**Tagged opinion**



**ORDERED in the Southern District of Florida on October 20, 2008.**

                          **Robert A. Mark, Judge**
                       **United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re: | CASE NO.  04-18988-BKC-RAM |
|  | CHAPTER  13 |
| YOSVANY GRANDA, | |
|         Debtor. | |

**ORDER DISCHARGING ORDER**
**TO SHOW CAUSE SUBJECT TO GMAC**
**MORTGAGE'S COMPLIANCE WITH NEW PROCEDURES**

     This Order addresses a problem which the Court hopes was limited and will now be corrected.  The problem: GMAC Mortgage, LLC ("GMAC") signed an affidavit in support of an application to withdraw unclaimed funds from the Court registry.  GMAC's affidavit filed in support of the application stated that GMAC was entitled to payment of the funds when, in fact, GMAC had been paid in full.  Upon discovery of these facts, the Court entered

an Order to Show Cause why GMAC should not be sanctioned for filing a false affidavit. The Order to Show Cause also required GMAC to provide adequate assurance that similar mistakes will not occur in future applications.

Based upon the evidence presented at the show cause hearing, and for the reasons discussed below, the Court finds that the Order to Show Cause should be discharged and no sanctions imposed. This finding is subject to GMAC adopting the new procedures described at the hearing, and subject to GMAC reviewing all unclaimed funds applications it has filed in this district in the past two years, to insure that no similar mistakes occurred.

**Factual and Procedural Background**

**A.   The GMAC Application and Initial Hearing**

The problem came to the Court's attention because two applications were filed to recover the same money on deposit in the Court registry. One application was filed by a funds locator, Dilks & Knopik, LLC ("Dilks") on behalf of GMAC Mortgage, LLC ("GMAC") (the "GMAC Application") [CP# 85], and one was filed on behalf of the Debtor (the "Debtor's Application") [CP# 86]. Since there were competing claims to the same funds, the Applications were set for hearing on July 10, 2008.

The facts are simple. The Debtor filed his Chapter 13 case on September 23, 2004. On July 29, 2005, a proof of claim (the "Claim") was filed on behalf of Homecomings Financial Network,

2

Inc., c/o GMAC Mortgage. The Claim arises from a foreclosure judgment. The Claim amount is $53,336.81, with an asserted prepetition arrearage of $6,133.92.

On July 26, 2006, the Debtor filed his Second Amended Chapter 13 Plan (the "Plan") [CP# 67]. The Plan provided for a cure of the $6,133.92 arrearage set out in the Claim over the first 48 months of the plan. Unfortunately, the Debtor was unable to confirm his Plan and on September 7, 2006, the case was dismissed [CP# 73].

On March 16, 2007, the Chapter 13 Trustee filed a Notice of Deposit of Funds with the U.S. Bankruptcy Court Clerk [CP# 80]. The Notice references the sum of $<u>6,039.55</u>, representing two checks sent by the Trustee to Homecoming Financial Network, c/o GMAC Mortgage, which were not presented for payment. These monies were plan payments to GMAC which were vested and therefore payable to GMAC even though the case was dismissed prior to confirmation.

The GMAC Application includes an Affidavit in Support of the Application for Payment of Unclaimed Funds signed by William J. Maguire, Senior Vice-President of GMAC Mortgage (the "GMAC Affidavit"). In the GMAC Affidavit, signed under penalty of perjury, Mr. Maguire states that "GMAC Mortgage, LLC is entitled to payment." GMAC Affidavit, ¶3.

The Debtor's Application is supported by an Affidavit of Claimant signed by the Debtor's wife, Estrella Granda (the

3

"Debtor's Affidavit").  As described in the Debtor's Affidavit,

> "[t]he funds deposited with the Court Registry were returned to the Chapter 13 Trustee because the creditor foreclosed on the property securing the debt.  The Creditor was paid in full and the foreclosure case yielded a surplus to the debtor."

Debtor's Affidavit, ¶2.  The facts asserted in the Debtor's Affidavit are supported by documents attached thereto, including a Certificate of Title showing that the property was acquired at the foreclosure sale on March 15, 2007 by a third party purchaser.  Also attached is a copy of the state court docket in the foreclosure case reflecting payment to Homecomings Financial Network on March 27, 2007.  The docket also includes entries confirming that there was a surplus.  Thus, it is clear that the foreclosure judgment and therefore the claim, were paid in full.  GMAC does not contest this finding.

Dilks appeared at the July 10th hearing through counsel and requested leave to withdraw the GMAC Application based on the Debtor's Affidavit and supporting facts.  The Court concluded that Dilks, a funds locator, could have engaged in additional due diligence, but that its actions were not sanctionable.  The Court reached this conclusion for two reasons.  First, in a practice which the Chapter 13 Trustee has now discontinued, the Notice of Deposit did not indicate that the checks were returned by the creditor.  This important fact would have put Dilks on notice that GMAC may not be entitled to the funds.  Second, Dilks did

4

not file the Application until it obtained the GMAC Affidavit which, as noted earlier, affirmatively stated that GMAC was entitled to payment.

The obvious and serious problem was that the GMAC Affidavit contained false representations. The purpose of an affidavit is to ensure that the affiant, under penalty of perjury, has performed the due diligence necessary to attest to the accuracy of his or her statements. That due diligence was lacking here. Contrary to the statement in the GMAC Affidavit, the judgment on the mortgage was paid in full nearly one year earlier following the foreclosure sale.

Absent diligent action by the Debtor, GMAC's false affidavit would have resulted in GMAC receiving funds rightfully belonging to the Debtor. The Court was concerned that similar mistakes had occurred or could occur in the future causing prejudice to past or future debtors. Thus, the Court found that this matter should be pursued.

Therefore, following the July 10th hearing, the Court entered its Order Setting Hearing for GMAC Mortgage to Show Cause Why it Should Not be Sanctioned for Filing a False Affidavit in Support of Application (the "Show Cause Order") [CP# 91]. That Order required GMAC to appear at a hearing on August 19, 2008 (the "Show Cause Hearing"), to show cause why it should not be sanctioned for filing the false GMAC Affidavit and to provide appropriate assurance to the Court that similar errors will not

5

occur in the future.  William T. Maguire, affiant on the GMAC Affidavit, was ordered to appear at the hearing in person or by telephone.

### B.  The Show Cause Hearing

The Court conducted the Show Cause Hearing on October 7, 2008.  William Maguire appeared at the hearing represented by counsel from Delaware and by local counsel.  The United States Trustee's Office ("U.S. Trustee") also appeared.  The testimony of Mr. Maguire and the exhibits introduced into evidence resulted in two primary findings by the Court: First, the GMAC procedures in place when the GMAC Application was filed were deficient.  These procedures did not include any meaningful due diligence to support the assertion in the GMAC Affidavit that "GMAC is entitled to payment."

Second, the Court finds that GMAC has taken this Court's Show Cause Order seriously and has proposed corrective action.  It has candidly admitted its prior shortcomings and has implemented a new procedure to ensure that applications to withdraw unclaimed funds will only be filed after a reasonable investigation confirms that the funds are actually due.  Here are the facts which support these conclusions.

Mr. Maguire is a Senior Vice President at GMAC with responsibility over applications for unclaimed funds, including funds deposited in the registry of bankruptcy courts.  In his testimony, he described the GMAC unclaimed funds policy in effect

before this case (the "Old Policy") and described the new policy ("New Policy") he has implemented to prevent similar mistakes in the future.

The Old Policy was unwritten and very limited in scope.  If a funds locator contacted GMAC to solicit a power of attorney to recover unclaimed funds, a GMAC analyst would first confirm that the entity listed in the solicitation was, in fact, a GMAC entity.  If so, GMAC would advise the funds locator to prepare the Application and send it to GMAC for execution of a power of attorney and affidavit.  The only other due diligence performed by the analyst in Mr. Maguire's department was to confirm that the GMAC entity listed in the papers had serviced a loan to the named debtor.  The glaring deficiency in the Old Policy was that GMAC did <u>not</u> review its loan records to determine whether any money remained due on the underlying loan.

At the hearing, GMAC's counsel argued that the GMAC Affidavit was not false since Mr. Maguire's statement that the funds were due was couched in the protective phrase "to the best of my knowledge and belief," and he did not "know" that GMAC had been paid.  The Court agrees in part.  Mr. Maguire did not intentionally sign a false affidavit.  The problem is that the Old Policy did not include the due diligence necessary to provide Mr. Maguire with sufficient "knowledge' to support his "belief" that the funds were actually due.

As stated earlier, in the Court's summary of its

7

conclusions, GMAC and Mr. Maguire have taken this problem seriously. First, GMAC produced documents and Mr. Maguire appeared for a Rule 2004 Examination in response to a Subpoena Duces Tecum issued by the U.S. Trustee (A copy of the Subpoena was introduced into evidence as Exhibit 5). Second, despite the Court's offer to allow Mr. Maguire to appear at the Show Cause Hearing by telephone, he traveled to Miami to testify in person. Finally, and most importantly, GMAC has created and agreed to implement a new procedure to correct the problem.

A written summary of the New Policy was introduced into evidence at the hearing as GMAC's Exhibit 3. Under the New Policy, GMAC will undertake significantly more due diligence before it executes documents in support of an application for unclaimed funds. First, GMAC will require more information from the funds locators, including the following:

1. Full name of the company the unclaimed funds are identified with;
2. Full address of the property the funds are identified with;
3. Full name and address of the borrower;
4. Date of deposit of unclaimed funds in question;
5. Copy of the trustee's notice of deposit of unclaimed funds (with exhibits); and
6. Any additional detailed information, such as BK Case # or Loan Number.

Second, once this information is received, GMAC will forward it to the appropriate business unit to research the status of the

underlying loan.  The research will include a determination on "whether the loan has been paid in full or otherwise satisfied by the borrower's compliance with a final settlement."  This loan status information will then be reviewed "and a determination will be made on pursuing the funds."  In short, under the New Policy, GMAC will execute the application documents only if the research confirms that the funds are due.

### C. <u>Appropriate Relief</u>

At the Show Cause Hearing, the U.S. Trustee proposed remedies, including requiring GMAC to retain an independent auditor to review all unclaimed funds applications before they are filed and to review past applications which have been filed throughout the country in the past several years.  GMAC argued that the U.S. Trustee lacked standing to seek sanctions and that there was no cause or basis for the Court to impose sanctions given GMAC's response to the Show Cause Order.

The Court finds that the U.S. Trustee had standing to participate in this matter and the Court acknowledges and appreciates its efforts.  Nevertheless, the Court finds that the remedies proposed by the U.S. Trustee are unreasonably burdensome since, at this point, there is no evidence that the problem in this case was widespread.

The Court does not reach the issue of whether sanctions should or could be imposed on GMAC since, at the conclusion of the hearing, GMAC agreed to voluntarily implement the actions

9

which this Court finds necessary and appropriate (the "Agreed Actions").  These actions are as follows:

    A.  GMAC agrees to implement the New Policy described in this Order in all future unclaimed funds applications filed in any bankruptcy court in the United States, as supplemented by one additional procedure suggested by the Court.  Specifically, affidavit filed in support of future applications will describe the facts relied on by the affiant to support his or her statement that the funds at issue are still owed to GMAC.

    B.  GMAC will review every application it has filed in the past two years to withdraw funds deposited in the registry of the U.S. Bankruptcy Court for the Southern District of Florida (the "Past Applications").  With respect to each such application, GMAC shall undertake an investigation utilizing the procedures in its New Policy, and shall file an affidavit reaffirming that the funds it recovered were due, and stating the facts supporting that conclusion.  If the investigation reveals that any funds were obtained in error, that conclusion shall also be stated in an affidavit together with the facts supporting the conclusion. In each instance in which GMAC discovers an error, the affidavit shall also include a statement describing what GMAC has done to correct the mistake.

    C.  The affidavits required by subparagraph B above shall be attached to a Notice of Compliance and filed solely in this case, not in the cases subject of the Past Applications.  This

filing shall be made no later than <u>December 8, 2008</u>.  This deadline may be extended, for cause, if GMAC needs additional time to conduct the required due diligence on the Past Applications.

Based upon the foregoing findings and subject to GMAC's compliance with the Agreed Actions describe in this Order, it is -

**ORDERED** as follows:

1. The Order to Show Cause is discharged and no sanctions are imposed.

2. The Court reserves jurisdiction to conduct further proceedings on the issues raised in the Show Cause Order if GMAC fails to undertake the Agreed Actions or if its filing with respect to Past Applications reveals that the mistake in this case occurred in numerous other cases in this district.  In that event, the Court will consider broader relief and, of course, provide GMAC an opportunity to argue why any additional relief is not factually or legally justified or appropriate.

###

COPIES TO:

**SEE ATTACHED SERVICE LIST:**

**SERVICE LIST**

Joan M. Levit, Esq.
AKERMAN SENTERFITT
350 East Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL 33301-2229
(Co-Counsel for GMAC)

Kurt Gwynne, Esq.
REED SMITH, LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
(Counsel for GMAC)

Steven Schneiderman, Staff Attorney
Office of the United States Trustee
51 S.W. First Avenue, Suite 1204
Miami, FL 33130

Joshua S. Miller, Esq.
MILLER & FUNCIA, P.A.
9555 North Kendall Drive, Suite 211
Miami, FL 33176
(Counsel for Debtor)